OLIVER MOULTON *versus* GEORGE W. WITHERELL.

A writ, containing one count in trespass *de bonis,* and another in case, may be amended by adding a more formal count in trover for the same property.

Where the defendant, a boom owner, had, in accordance with a general custom, taken another's logs and appropriated some of them for boom logs, and subsequently the owner of the logs bargained them to the plaintiff by a written agreement, in which the bargainer retained "a full and perfect lien on the logs and lumber manufactured therefrom as collateral security for the payment of the notes given therefor," and the plaintiff thereupon went to defendant's boom, found the logs, and requested the defendant to turn them out of his boom which he agreed to do, but did not do; — *Held,* that the plaintiff might maintain trover for the value of the logs as against the defendant, although, when the action was commenced, said agreement had not been delivered to the plaintiff, and some of the notes were not due, and unpaid.

If, in the trial of such action, the presiding Judge instruct the jury that, if, after a conversion by the defendant, the plaintiff had made an agreement with the owners to purchase all of the logs of the marks stated, including the logs previously converted by the defendant, and the plaintiff had been permitted by the owners to take possession of the logs, as he might find them in the river, from time to time, to manufacture, and the plaintiff had claimed the logs in suit of the defendant, and demanded them of him, and the defendant had refused or neglected to give them up, they would be authorized to find for the plaintiff, *though the title to the logs had not passed to him;* a new trial will not be granted, although the instruction may not be tenable as an abstract legal proposition, if it is not perceived that the defendant could be injured thereby.

ON EXCEPTIONS from *Nisi Prius,* APPLETON, C. J., presiding.

TROVER.

*Defendant called Abner Coburn,* who testified as follows: I had an interest in the Murray and Wyman logs, and had, when they were sold. Our logs were bargained for in July, 1859. Perhaps the title passed in 1860. The memorandum at the bottom of the bill of sale shows the time. This bill of sale was delivered to Moulton at that time. [The bill of sale put in by plaintiff was here shown the witness.] Witherell talked with me several times about taking some of our logs for boom sticks. I know we talked about it once. I

cannot recollect precisely.—My recollection about these logs is not definite—in the spring of 1859.

*Cross-examined.*—I cannot say I gave Witherell leave to take the logs; I might have acquiesced in his stopping some. Am not definite as to what was said. The custom of stopping logs by boom owners, for boom sticks, is general. They usually select sticks and never pay for them. The custom is acquiesced in by log owners. Moulton collected some of the logs in 1859 and 1860. I don't recollect of giving him any authority. Nothing said about it. I did not object. I supposed he would take some, as he paid, from time to time. I did not part with any title. I had a right to take them anywhere. The bill of sale was not delivered till all was paid up. *I considered them sold to Moulton when the bargain was made.* I did not anticipate that I gave Witherell leave to take any of these logs; I might have acquiesced in his taking some of them.

The presiding Judge instructed the jury that, if, after a conversion by defendant, the plaintiff had made an agreement with Mr. Coburn and Murray & Wyman to purchase all of the logs of the marks stated, including the logs previously converted by defendant, and the plaintiff had been permitted by Coburn and Murray & Wyman to take possession of the logs, as he might find them on the river, from time to time, to manufacture, and the plaintiff had claimed the logs in suit of the defendant, and demanded them of him, and defendant had refused or neglected to give them up, they would be authorized to find for the plaintiff, though the title to the logs had not passed to him.

The verdict was for the plaintiff.

And the defendant excepted.

The other material facts sufficiently appear in the opinion of the Court.

*Clay*, for the plaintiff.

*Libbey*, for the defendant, argued:—

1. The amendment allowing the count in trover should not have been allowed. It is not of the same *kind* of action.

Moulton *v.* Witherell.

The new count must be of the same kind of action, subject to the same plea and for the same cause. *Houghton* v. *Stowell*, 28 Maine, 215; *McVicker* v. *Beedy*, 31 Maine, 314; *Sawyer* v. *Goodwin*, 34 Maine, 419; *Ball* v. *Claflin*, 5 Pick., 303; *Wiley* v. *Gale*, 1 Met., 553.

2. The instructions to the jury are erroneous. The rule, as given to the jury by the Judge, permits the plaintiff to recover without title, and without possession, actual or constructive. Coburn, and Murray & Wyman had the title and the constructive possession which follows the title, but the actual possession was in defendant, who had before converted the logs to his own use. In taking them he was a trespasser. Coburn could undoubtedly maintain trespass, but it will not be contended that the plaintiff could. Can he maintain trover? To maintain trover, plaintiff must have title and possession, or the right to immediate possession. He had neither. *Clapp* v. *Glidden*, 39 Maine, 448; *Ames* v. *Plummer*, 42 Maine, 197; *Muggridge* v. *Eveleth*, 9 Met., 233; *Morgan* v. *Ide*, 8 Cush., 420; *Fairbanks* v. *Phelps*, 22 Pick., 538.

The opinion of the Court was drawn by

BARROWS, J.—The writ in this case, dated Aug. 2, 1860, originally contained two counts, one in trespass and one in case. The Legislature of this State many years ago abolished the distinction between trespass and trespass on the case, and this Court, in *Moulton* v. *Smith*, 32 Maine, 410, recognizes the right of the plaintiff to combine, in the same writ, a count in the usual form of trespass *de bonis asportatis* and another alleging a taking and conversion of goods by defendant's deputy, and held that, when the state of facts shows a party entitled to recover in trespass on the case, his declaration may be framed in either form, or both.

" *Case in trover* is an action founded on property general or special."

" This action of *trover and conversion* is an action of *trespass on the case*, and lies against any man who has in his possession, by any means whatever, the personal goods of

another, and sells them or uses them without the consent of the owner, or refuses to deliver them when demanded. The *term* is mere matter of form." 3 Dane's Abridgement, c. 77, art. 1, §§ 1 and 2, pp. 184, 185.

The defendant's objection to the allowance of the amendment, by adding a more formal count in trover, cannot prevail.

It would seem, from the report, that most, if not all of the logs in controversy had been appropriated by the defendant for his boom at Fairfield, before the plaintiff had bargained for them, confessedly without payment to, or permission from any one, but according to a sort of practice among boom owners to take such sticks as are found suitable for their purpose, without purchase or license, or any regard whatever to the rights of the log owners.

Now, this custom of trespassing, of course, amounts to nothing by way of justification in a legal point of view, and the defendant's relation to the logs is that of a mere wrongdoer. But, being in possession, he can be held answerable only to one having a better right, a right sufficient to entitle him to maintain the action.

The plaintiff's property in a portion of the logs is not controverted. But his claim to the "A wide girdle D," and the "notch O" and "notch C," accrued by virtue of bargains made with Murray & Wyman and with A. & P. Coburn, in the summer of 1859. The written instruments, subscribed by these parties, respectively set forth an agreement for the sale of these logs to the plaintiff, at a price mentioned, payable according to the tenor of certain notes falling due at regular intervals, and contain the following stipulations : — "and it is mutually agreed that the said" (vendors in each case) "are to retain full and perfect lien upon the aforesaid logs *and lumber manufactured therefrom,* as collateral security for the well and true payment of the above sums, and that nothing shall be added to or deducted from the above-mentioned price, in consequence of the logs proving better or worse than was anticipated *at the time of sale.*" A. & P.

Moulton *v.* Witherell.

Coburn also agreed to turn the balance of the two lots which they sold "out of Moosehead Lake free of expense to said Moulton," and said Moulton was "to pay all expenses below." The expenses upon the Murray & Wyman logs, plaintiff was to pay. From the tenor of these instruments, even without the oral testimony which was put into the case, it is manifest that the *plaintiff was to have the possession* of the logs thus bargained, and to drive and manufacture them to meet his notes. It would seem that, after the bargain, he proceeded to do this, without denial or interruption by his vendors, at any time, and had thus taken possession of most of the logs purchased. Plaintiff and defendant both concur in testifying that the plaintiff came to the defendant's boom, had these logs, which are in controversy here, scaled, and demanded that the defendant should turn them out, and that the defendant agreed to do so, but did not.

But, at the time that the suit was commenced, two of the five notes given to the Coburns, and one of the notes given to Murray & Wyman, had not become due and were not paid.

Upon the facts, as detailed, the presiding Judge instructed the jury that, after a conversion by the defendant, the plaintiff had made an agreement with Mr. Coburn and Murray & Wyman, to purchase all of the logs of the marks stated, including the logs previously converted by the defendant, and the plaintiff had been permitted by Coburn and by Murray & Wyman to take possession of the logs as he might find them on the river, from time to time, to manufacture, and the plaintiff had claimed the logs in suit of the defendant, and demanded them of him, and the defendant had neglected or refused to give them up, they would be authorized to find for the plaintiff, though the title to the logs had not passed to him. And the defendant contends here, that the plaintiff had no such property, possession, or right of possession, as would enable him to maintain trover, and excepts to these instructions.

When goods are sold while in the tortious possession of

Moulton *v.* Witherell.

a third person, the purchaser, after demand, may maintain trover for them against such third person, though they were never delivered. *Cartland* v. *Morrison*, 32 Maine, 190.

The conversion, *quoad* this plaintiff, took place upon the defendant's neglect to turn out the logs as requested. The right of possession had been ceded to the plaintiff by his vendors, and he had taken possession under his contract of sale, and by their permission, of the identical logs in controversy, had had them scaled, and would have retained that possession but for the tortious acts of the defendant.

Espinasse answers the question, " by whom may trover be maintained," thus, — " Possession alone gives a sufficient title to maintain this action against all persons except against the owner." " But possession is not necessary to maintain this action, for *a right of possession* is sufficient." " But, to support this action, property in the plaintiff is eventually necessary." " But an absolute property is not necessary, as a person having a special property may maintain the action."

In *Sutton* v. *Buck*, 2 Taunt., 301, a party who was the purchaser of a ship and had taken possession, but whose *title was not completed* by any proper registry, or *by any regular conveyance*, sued in trover for the recovery of certain portions of the ship against a wrongdoer, by whom he had been dispossessed, and was held entitled to recover; the ground of the opinion being, that his possession alone, under such circumstances, was a good title against a mere wrongdoer.

Judge STORY, in discussing the nature of special property, says, — " When we speak of a person's having property in a thing, we mean that he has some fixed interest in it, (*jus in re*,) or some fixed right attached to it, either equitable or legal, and when we speak of a special property in a thing, we mean some special fixed interest or right therein, distinct from, and subordinate to, the absolute property or interest in the general owner." " Special property," says

Mr. Justice LAWRENCE, "is where he who has the possession holds it subject to the claims of other persons."

If we should assume, then, that it is true, as the defendant contends, that the plaintiff had not, when his action was commenced, the general property in, and an absolute title to, the logs, but that the Coburns and Murray & Wyman were still the general owners, under the stipulation before recited, is the position of the defendant any better?

His counsel argues, that Coburn and Murray & Wyman might maintain suits against him, but *Fairbanks* v. *Phelps*, 22 Pick., 535, is directly to the point, that a vendor under such circumstances could not maintain trover, having parted with his right of possession to the conditional vendee, and *Ayer* v. *Bartlett*, 9 Pick., 156, settles it, that *case* would be the only remedy for an injury to such a reversionary interest as *they* had. What damages could *they* recover *in case*, here, when it appears that the plaintiff regularly paid his notes and made his special property absolute before the trial?

The plaintiff had a special property and the right of possession in the logs in controversy. He had taken possession of them, claiming them as owner. Nobody but his vendors, by virtue of the lien which they had reserved, could rightfully defeat his possession.

An outstanding lien, in favor of a third party, will not defeat the right of a person otherwise entitled to recover in trover, against a mere wrongdoer. *Ames* v. *Palmer*, 42 Maine, 197.

The instruction given, required the jury to find all the facts necessary for the maintenance of the action, unless the concluding words, "though the title to the logs had not passed to him," so qualify them as to mislead the jury. Applying the instructions to the facts developed, the meaning plainly is, if you find that the plaintiff had a special property and the right of possession by permission of the Coburns and Murray & Wyman, and had demanded these logs of the defendant, going onto them and claiming them

as his own, and that the defendant thereupon refused or neglected to give them up, you need not trouble yourselves with any question as to the right of the original owners to sell them, after the defendant had wrongfully taken them into his possession, nor as to the plaintiff's having the absolute unincumbered property in the logs, as between himself and his vendors.

Conceding that the language of the instructions, as reported in the exceptions, amounts to what is not tenable as an abstract legal proposition, it is not perceived that the defendant could have been injured thereby. Under such circumstances, exceptions will not be sustained. *Freeman* v. *Rankins*, 21 Maine, 449.

Special property, and possession by permission of the general owner, would entitle the plaintiff to maintain his action against the defendant.

*Motion and exceptions overruled.*

APPLETON, C. J., CUTTING, DAVIS and WALTON, JJ., concurred.